UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

WARREN W. PATTERSON

Plaintiff,

- against -

ROBERT DIGGS, DARRYL HILL,
DENNIS COLES, GARY GRICE, JASON
HUNTER, ELGIN TURNER, CLIFFORD
SMITH, COREY WOODS, LAMONT
JODY HAWKINS, TARIK
AZZOUGARH, PADDLE8 NY LLC

Defendants.

CASE NO.: 7:18-cv-03142-NSR

---

## DEFENDANT LAMONT JODY HAWKIN'S
## ANSWER AND AFFIRMATIVE DEFENSES

Defendant Lamont Jody Hawkins ("Hawkins" or "Defendant), by and through his undersigned attorneys, submits his Answer and Affirmative Defenses to the Complaint [Doc. No. 1] dated April 10, 2018, filed by plaintiff Warren W. Patterson ("Plaintiff" or "Patterson") as follows:

### NATURE OF THE ACTION

1.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 1 of the Complaint.

2.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2 of the Complaint.

3.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3 of the Complaint.

4.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 4 of the Complaint.

## PARTIES

5.      Defendant does not have knowledge or information sufficient to form a belief as to the truth if the allegations set forth in paragraphs 5, 6, 7, 8, 9, 10, 11, 12 and 13 of the Complaint.

6.      Defendant admits that he is an individual residing in the State of New Jersey and a citizen thereof. Defendant does not reside in the State of New York as alleged by the Plaintiff in paragraph 14 of the Complaint.

7.      Defendant admits the truth of the allegations set forth in paragraph 15 of the Complaint.

8.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 16 of the Complaint.

## JURISDICTION AND VENUE

9.      Defendant repeats and realleges  his responses to the allegations contained in paragraphs 1 through 16 of the Complaint as if fully set forth herein.

10.      Defendant does not have knowledge or information sufficient to form a belief as to the truth if the allegations set forth in paragraphs 18, 19, 20, 21, 22, 23, 24, 25, 26, 27 and 28 of the Complaint.

11.      Defendant denies the truth of the allegations alleged in paragraphs 29, 30 and 31 of the Complaint as they refer and/or relate to him personally and does not have knowledge or information sufficient to form a belief as to those allegations as they refer or relate to any other defendants named herein.

2

12.     Defendant does not have knowledge or information sufficient to form a belief as to the truth if the allegations set forth in paragraphs 32, 33, 34 and 35 of the Complaint.

## BACKGROUND AND FACTS

13.     Defendant repeats and realleges his responses to the allegations contained in paragraphs 1 through 35 of the Complaint as if fully set forth herein.

14.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50 and 51 of the Complaint,

20.     Defendant denies the truth of the allegations set forth in paragraphs 52, 53, 54, 55 and 56 of the Complaint.

21.     Defendant denies that he had any knowledge that the album "Once Upon a Time in Shaolin" (hereinafter the "Album") was being created by one or more of the defendants.

22.     Defendant denies that he participated in the advertising, sale and/or any commercial exploitation of the Album.

23.      Defendant denies that he received any payment from the proceeds of the sale of the Album, from one or more of the above named defendants or otherwise.

## COUNT I
### (Copyright Infringement)

24.     Defendant repeats and realleges  his responses to the allegations contained in paragraphs 1 through 56 of the Complaint as if fully set forth herein.

25.     Defendant denies the truth of the allegations set forth in paragraphs 58, 59, 60, 61 and 62 of the Complaint.

**COUNT II**
**(Violations of the Digital Millennium Copyright Act (17 U.S.C. 1202)**

26.     Defendant repeats and realleges  his responses to the allegations contained in paragraphs 1 through 62 of the Complaint as if fully set forth herein.

27.     Defendant denies the truth of the allegations set forth in paragraphs 64, 65 and 66, of the Complaint.

**COUNT III**
**(Vicarious Copyright Infringement)**

28.     Defendant repeats and realleges his responses to the allegations contained in paragraphs 1 through 66 of the Complaint as if fully set forth herein.

29.     Defendant denies the truth of the allegations set forth in paragraphs 68, 69, 70, 71 and 72 of the Complaint.

**COUNT IV**
**(Contributory Infringement)**

30.     Defendant repeats and realleges his responses to the allegations contained in paragraphs 1 through 72 of the Complaint as if fully set forth herein.

31.     Defendant denies the truth of the allegations set forth in paragraphs 74, 75, 76, 77, 78 and 79 of the Complaint.

**COUNT V**
**(Vicarious Copyright Infringement)**

33.     Defendant repeats and realleges his responses to the allegations contained in paragraphs 1 through 79 of the Complaint as if fully set forth herein.

33.     Defendant denies the truth of the allegations set forth in paragraphs 81, 82, 83. 84 and 85 of the Complaint.

## COUNT VI

### (False or Misleading Representation of Fact)

34.     Defendant repeats and realleges his responses to the allegations contained in paragraphs 1 through 85 of the Complaint as if fully set forth herein.

35.     Defendant denies the truth of the allegations set forth in paragraphs 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100 and 101 of the Complaint.

## COUNT VII

### (False Advertising)

36.     Defendant repeats and realleges his responses to the allegations contained in paragraphs 1 through 101 of the Complaint as if fully set forth herein.

37.     Defendant denies the truth of the allegations set forth in paragraphs 103, 104, 105, 106, 107, 108, 109, 110 and 111 of the Complaint.


### AFFIRMATIVE DEFENSES OF DEFENDANT LAMONT JODY HAWKINS

As and for his Affirmative Defenses, defendant Lamont Jody Hawkins alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails in whole or in part to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

This Court does not have personal jurisdiction over the Defendant.

### THIRD AFFIRMATIVE DEFENSE

This Court does not have subject matter jurisdiction over this action and the claims alleged against the Defendant.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate its damages.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of "fair use" and any use of Plaintiff's copyrighted work by one or more of the defendant's did not require the Plaintiff's consent.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims, in whole or in part, are barred by the doctrines of waiver, ratification, unclean hands, laches and/or estoppel, including but not limited to by Plaintiff's express instructions and permissions to one or more of the Defendants to use Plaintiff's work (copyrighted or otherwise) in connection with the Album.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the statute of limitations.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of acquiescence and/or ratification.

## NINTH AFFIRMATIVE DEFENSE

All of Plaintiff's alleged damages are speculative in nature and Plaintiff has not suffered any actual damages and/or has failed to allege any actual damages.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's alleged remedies are limited to the extent Plaintiff seeks overlapping and duplicative recovery based on various claims against Defendants for any alleged single wrong.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendant received no benefit from the alleged transactions referenced in the Complaint and did not commercially exploit the alleged copyrighted work, directly or indirectly, in connection with the Album and/or otherwise and therefore the plaintiff is not entitled to statutory damages, enhanced or otherwise, with respect to the Defendant.

## TWELFTH AFFIRMATIVE DEFENSE

The Plaintiff's own acts and omissions either caused or contributed to the damages alleged and, therefore, any recovery must be reduced to the extent of the Plaintiff's own acts and omissions.

## THIRTEENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred, in whole or in part, because the plaintiff does not possess a valid copyright for the allegedly infringed work and/or the plaintiff delayed registration of same.

## DEFENDANTS' CROSS-CLAIMS

Defendant Lamont Jody Hawkins, by and through his undersigned attorneys, hereby alleges his Cross-Claims against defendants Robert Diggs, Darryl Hill, Dennis Coles, Gary Grice, Jason Hunter, Elgin Turner, Clifford Smith, Corey Woods, Tarik Azzougarh and Paddle8 NY, LLC (the foregoing parties are collectively referred to as the "Cross-Claim Defendants"). Unless stated otherwise, each answer and affirmative defense contained herein is made by the Defendant against all Cross-Claim Defendants, jointly and severally.

1.      Hawkins is professionally known as U-God and is a recording artist, writer and one of the original members of the hip-hop collective the "Wu-Tang Clan".

2.      The Wu-Tang Clan was founded by Cross-Claim Defendant Robert Diggs (the "RZA") in 1992, and the RZA assembled the group's members, with the first iteration of the Wu-Tang Clan comprised of five (5) members.

3.      By 1993 the Wu-Tang Clan was comprised of nine (9) individuals, specifically (i) Robert Diggs p/k/a RZA; (ii) Clifford Smith p/k/a Method Man; (iii) Corey Woods p/k/a Raekwon (iv) Dennis Coles p/k/a Ghostface Killah; (v) Jason Hunter p/k/a Inspectah Deck; (vi) Elgin Turner p/k/a Masta Killa; (vii) Russell Jones p/k/a Ol' Dirty Bastard (now deceased); (viii) Gary Grice p/k/a GZA  and (ix) the plaintiff, Lamont Hawkins p/k/a U-God (the nine recording artists that comprise the group professionally known as the Wu-Tang Clan are collectively referred to herein as "the WTC" and/or "WTC Group" and are individually referred to herein as a "Member" and/or "WTC Member").

4.      Since its first commercial release in 1993, the Wu-Tang Clan and its members have sold millions of albums worldwide, collectively and individually as solo artists, including three certified platinum group albums and one certified gold album.

5.      From December of 1992 through on or about August 15, 2014, Hawkins entered into and was a party to various recording agreements with business entities owned and controlled by the RZA through and pursuant to which WTC Group albums were commercially released.

6.      The following WTC Group Albums were released by the RZA, through and/or pursuant to one or more of agreements Hawkins was a party to: (i) Enter the Wu-Tang ("Album 1"); (ii) Wu-Tang Forever ("Album 2"); (iii) The W ("Album 3"); (iv) Iron Flag ("Album 4"); (v) Disciples of the 36 Chambers ("Album 5"); (vi) Legend of the Wu-Tang Clan ("Album 6"); (vii) 8 Diagrams ("Album 7"); (viii) A Better Tomorrow ("Album 8") (collectively the "WTC Group Albums").

7.      Between January 1, 2009 and August 15, 2014, Hawkins was not a party to any recording agreement with Diggs and/or any entity owned and controlled by Diggs, as a member of the WTC Group and/or otherwise.

8.      During this period of time when Hawkins was not party to a recording agreement, he was contacted by Cross-Claim Defendant Tarik Azzougarh p/k/a Cilvaringz ("Cilvaringz") who represented to Hawkins that he was producing a "Cilvaringz album" and that this album would be a compilation songs produced by Cilvaringz and featuring the recorded performances of various members of the WTC and WTC affiliated recording artists.

9.      Cilvaringz offered to pay Hawkins $25,000 for the right to use four rap verses and two hooks written and recorded by U-god on five different musical compositions produced by Cilvaringz.

10.     In consideration for the payment, Cilvaringz would own the final version of the songs, but Hawkins would retain ownership of the publishing. Cilvaringz told Hawkins that the compilation album would be released at retail worldwide, marketed and promoted as a Cilvaringz album.

11.     Cilvaringz represented to Hawkins that the verses and hooks written and recorded by Hawkins and delivered to Cilvaringz in consideration for payment of the $25,000 would not be used in connection with, on or as part of a WTC Group album.

12.     In reliance upon the representations and promises made by Cilvaringz, Hawkins accepted the offer and signed off on the one page written release form Cilvaringz drafted and sent to him. Thereafter, Hawkins performed and delivered the verses and hooks and Cilvaringz paid Hawkins the agreed upon $25,000.00.

13.     Thereafter, Hawkins did not hear from Cilvaringz about the verses and hooks again and Cilvaringz never contacted Hawkins again about those verses and hooks, in connection with the purported "Cilvaringz Album" they were to be included on or otherwise.

14.     Thereafter, Album 8 (as defined above) was released on or about December 2, 2014 pursuant to a recording agreement entered into on August 15, 2014 between the members of the WTC, including Hawkins, and the RZA's entity, the Wu-Music Group (WMG).

15.     Pursuant to the recording agreement between Hawkins and WMG, WMG had twelve (12) months from the release date of Album 8 to exercise its option to extend the term of its agreement and its rights to the recording services of Hawkins and the other WTC Group Members.

16.      The terms of Hawkins' agreement with WMG allowed WMG to exercise its option to extend the term at any time prior to December 2, 2015 by notifying the WTC group members in writing of WMG's intention to do so.

17.     However, for the term to be extended, the 2014 WMG Agreement expressly states that WMG and the WTC group members had to mutually agree to the material terms that would govern each party's rights and obligations during the extended period (the "Option Period"), including but not limited to Hawkins' delivery commitments during the Option Period and the amounts of the advances and royalties that would be paid to Hawkins advance.

18.     Therefore, he 2014 WMG Agreement did not grant WMG the right to unilaterally extend its term and its rights to include any Masters featuring the recorded performance of Hawkins over and above those included on Album 8.

19.     At no time prior to December 2, 2015 or thereafter did WMG and/or its owner, Robert Diggs, inform the Plaintiffs of their intent or desire to extend the term of the 2014 WMG Agreement.

20.     When the 2014 WMG Agreement expired by its terms on December 2, 2015 only those Masters and Compositions included on Album 8 were subject to its terms.

21.     Furthermore, at no time between December 3, 2014 and December 2, 2015 did WMG (or any other entity owned or controlled by Diggs) and Hawkins enter another contract in connection with and/or for Hawkins future recording services.

22.     Based on the foregoing, neither Diggs nor any of the corporations of companies that he owned, in whole or in part, had the right to commercially release an additional WTC Group album that included any master recordings featuring the recorded performance of, or composition written by, Hawkins.

23.     Notwithstanding and despite the fact that neither Diggs nor Cilvaringz had the right to release a new WTC Group Album and/or to include the recorded performances of Hawkins on a new WTC Group Album, upon information and belief, on or about May 3, 2015, Diggs and Cilvaringz, individually and/or collectively, successfully sold, at auction and to the highest bidder, the WTC Group album entitled "Once Upon a Time in Shaolin" (the "Shaolin Album").

24.     Upon information and belief, Shaolin Album is a "double album" and consists of twenty-six (26) Masters featuring the recorded performances by the eight (8) living members of the WTC, including but not limited to Hawkins.

25.     Upon information and belief, all the Masters comprising and included on the Shaolin Album contain and embody Compositions that were written, in whole and/or in part by the eight (8) living members of the WTC, including but not limited to Hawkins.

26.     Upon information and belief, some or all of the verses and hooks written and recorded by Hawkins and delivered to Cilvaringz pursuant to their aforementioned agreement in 2011 were included on the Shaolin Album.

27.      Upon information and belief, in or around March of 2015, Cross Claim Defendants Diggs and Cilvaringz mutually and jointly decided to get publicity and media coverage by releasing a WTC Album, but only producing one (1) physical copy, in compact disc format of that album.

28.     Unbeknownst to the Plaintiffs, upon information and belief, Robert Diggs Cilvaringz conspired and mutually agreed to sell the Shaolin Album by and through the services of third party auction house and Cross-Claim Defendant Paddle.

29.     Upon information and belief, Robert Diggs and Cilvaringz entered a written contract with Paddle 8 whereby, in consideration for payment of a considerable commission from its sale, Paddle 8 would conduct/control/oversee the auction, bidding and sale of all right, title and interest in and the Shaolin Album.

30.     Upon information and belief, the Defendants authorized Paddle 8 to conduct the auction and on May 3, 2015, the Defendants sold all right, title and interest in and to the Shaolin Album by and through the auction held by Paddle 8.

31.     Upon information and belief, on or about May 3, 2015, the Defendants transferred and/or assigned all right, title and interest in and to the Shaolin Album to an individual named

Martin Shkreli ("Shkreli") in consideration for Shkreli's formal offer, bid and agreement to make payment to the Defendants in an amount not less than Two Million ($2,000,000.00) Dollars.

32.    Upon information and belief, all rights in and to Shaolin Album, including to all Masters and Compositions comprising, embodied and included thereon were assigned, transferred and conveyed to Shkreli pursuant to a written contract with the Defendants on or about August 26, 2015.

33.    At no time on or before August 26, 2015 did Hawkins authorize or permit Diggs' or Cilvaringz to include any masters featuring his recorded performances and/or Composition he had written to be included on the Shaolin Album.

34.    Upon information and belief, Diggs and/or Cilvaringz received payment and/or payments from Shkreli in an amount not less than Two Million ($2,000,000.00) Dollars in connection with and for the rights to the Shaolin Album, including all rights to the Masters, Compositions, images, pictures and/or materials thereon written by, performed by and featuring Hawkins

35.    At no time on or before August 26, 2015 did any of the Defendants request Hawkins' authorization, permission and/or consent to include one or more Masters featuring his recorded performance and/or include one or more Compositions written by Hawkins on the Shaolin Album.

36.    At no time prior to the auction, sale and/or transfer of rights to the Shaolin Album to Shkreli did Diggs or Cilvaringz inform Hawkins of their plan and decision to (i) release a new WTC Album; (ii) to use the masters Hawkins sold to Cilvaringz under what were clearly false pretenses for a WTC Group Album; (iii) to limit the reproduction, copying and/or the manufacturing of a new WTC group Album to one (1) copy;  (iv) sell all right, title and interest

in and to a new WTC Group Album by and through an auction to the highest bidder, with Paddle8 or otherwise.

37.     In fact, the Defendants never disclosed the contents or track list of the Shaolin Album prior to its sale to Shkreli and to date, Hawkins has not been allowed to listen to the Shaolin Album in its entirety.

38.     Prior to learning of the auction, the only information provided to Hawkins about a potential new WTC Group Album was from Robert Diggs. Robert Diggs told Hawkins that he was "shopping around" for a new Distributor and Distribution Agreement under which a new WTC Album could be released.

39.     Diggs and Cilvaringz concealed their plan to use Hawkins's recorded performances and written composition on the Shaolin Album and their plan to only have one copy made and to auction that copy off to the highest bidder.

40.     Diggs and Cilvaringz did not consult with and/or involved Hawkins in the selection of Masters and Composition that ultimately were included on the Shaolin Album, including but not limited to those Masters featuring Hawkins' recorded performance and written Compositions.

41.     Hawkins did not enter a written and/or oral agreement with any of the Cross Claim Defendants in connection with or that expressly referred to and/or referenced the Shaolin Album and/or permitted any of the Cross-Claim Defendants to include Hawkins written Compositions and/or recorded performances thereon.

42.     Upon information and belief, the Shaolin Album and/or its cover art, credits, and liner notes contain and incorporate the use of Hawkins' name, picture, portrait, likeness and/or image.

43.     At no time prior to and/or after the Defendants sale of the Shaolin Album to Shkreli did the Plaintiffs authorize, permit, consent and/or approve the use of Hawkins' name, picture, portrait, likeness and/or image in connection with, in and/or on the Shaolin Album.

44.     Upon information and belief, Cilvaringz and Diggs concealed their aforementioned plan with respect to the Shaolin Album from some or all of the other WTC Group members.

45.     Upon information and belief, Cilvaringz and Diggs concealed their plan from the WTC Group members  in order to obtain verses and hooks from them at a reduced rate, similar to the agreement between Cilvaringz and Hawkins in 2011.

46.     Upon information and belief, all of the proceeds from the auction of the Shaolin Album were paid to Diggs, Cilvaringz and Paddle8 and none of the WTC Group members have received any amount, portion, percent or share of the proceeds from the sale of the Shaolin Album, including any portion or amount of the purchase price paid by and through the auction conducted by Paddle 8, which upon information and belief is not less than Two Million (2,000,000) Dollars.

47.     Then Plaintiff is entitled to payment from the sale of Album 9 in an amount equal to its pro-share of the sale price, which is not less than Two Hundred and Fifty Thousand ($250,000.00) Dollars.

48.     Furthermore, to the extent that Hawkins is found liable to the Plaintiff for any of its claims alleged in the Complaint, Hawkins is entitled to indemnification and/or contribution from one or more of Diggs, Cilvaringz, Paddle8 and if applicable, one or more additional Cross-Claim Defendants.

**FIRST CROSS-CLAIM AGAINST CROSS-CLAIM DEFENDANTS**

**COMMON LAW INDEMNIFICATION**

49.     Hawkins repeats and realleges his responses to the allegations contained in paragraphs 1 through 48 of the Complaint as if fully set forth herein

50.     If Plaintiff sustained damages in the manner and at the time and place as alleged, in its Complaint and if it is found that the Defendant is liable to Plaintiff herein, then, upon said allegations of the Complaint and upon the pleadings and evidence, said damages were sustained by reason of the sole, active, and primary carelessness and/or recklessness and/or negligence and/or affirmative acts or omissions and/or commission and/or breach of contract, tort and/or strict liability by the Cross-Claim Defendants, as a result thereof, the Defendant is entitled to complete indemnification by the Cross-Claim Defendants, jointly and severally, from any judgment entered against the Defendants that Plaintiff may recover against Defendants.   In addition and/or in the alternative, the Cross-Claim Defendants are entitled to indemnification by the Cross-Claim Defendants, jointly and severally, for all amounts paid to the Cross-Claim Defendants, individually and/or collectively, from the auction, sale and/or commercial exploitation of the album entitled "Once Upon a Time in Shaolin" , in any manner and in any medium.

**SECOND CROSS-CLAIM AGAINST CROSS-CLAIM DEFENDANTS**

**CONTRIBUTION**

51.     Hawkins repeats and realleges his responses to the allegations contained in paragraphs 1 through 50 of the Complaint as if fully set forth herein

16

52.     If Plaintiff sustained damages in the manner and at the time and place as alleged, in its Complaint and if it is found that the Defendant is liable to Plaintiff herein, then, upon said allegations of the Complaint and upon the pleadings and evidence, said damages were sustained by reason of the active, and primary carelessness and/or recklessness and/or negligence and/or affirmative acts or omissions and/or commission and/or breach of contract, tort and/or strict liability by one or more of the Cross-Claim Defendants, as a result thereof, the Defendant is entitled to and/or in the event that the Defendant is not indemnified in full and/or in part from any judgment entered against Defendants in favor of Plaintiff and any judgment in favor of the Plaintiff is not recovered against the Cross-Claim Defendants on the basis of indemnification, the Defendants demand judgment over and against the Cross-Claim Defendants herein on the basis of an apportionment of their respective individual and/or collective responsibility for the alleged infringements, acts, occurrences, torts, breaches and/or omissions alleged in the Complaint filed by Plaintiff, for all or part of any judgment or verdict that Plaintiff may recover against the Defendant, together with costs, disbursements and reasonable attorneys' fees.

## THIRD CROSS-CLAIM AGAINST ROBERT DIGGS AND TARIK AZZOUGARH

### (Unlawful Appropriation and Unjust Enrichment - Shaolin Album)

53.     Hawkins repeats and realleges his responses to the allegations contained in paragraphs 1 through 52 of the Complaint as if fully set forth herein

54.     As alleged above, Diggs did not have the right to Hawkins recording services and/or services as a writer and/or to include the recorded performances of Hawkins on a WTC Group Album after the release of Album 8.

55.     As alleged above, at no point in time did Cilvaringz have the right to use the verses and hooks written and recorded by Hawkins which were subject to their 2011 agreement in connection with and/or on a WTC Group Album.

56.     Notwithstanding the foregoing, the Defendants concealed their plan to compile, produce and auction off the Shaolin Album, which included Masters featuring the recorded performance of Hawkins and Compositions written by Hawkins, to this highest bidder.

57.     As a result of their acts of unlawful appropriation, the Defendants have been unjustly enriched the expense of Hawkins by selling the Masters and Compositions comprising the Shaolin Album for not less than for Two Million ($2,000,00.00) Dollars.

58.     However, Diggs and Cilvaringz have failed to pay Hawkins for his services in connection with the Shaolin Album, which upon their prior course of conduct if a pro-rata share based upon the number of WTC Members whose  writing and recording services were used by Diggs and Cilvaringz in/on the Shaolin Album.

59.     Diggs and Cilvaringz and have unlawfully obtained money, which under the circumstances in equity and good conscience they ought not to retain

60.     Diggs and Cilvaringz, by failing to remit to Hawkins, proper compensation for his recording and writing services, the Defendants have been unjustly enriched in an amount to be determined at trial, but in any event in an amount not less than Two Hundred and Fifty Thousand ($250,000) Dollars.

61.     As the acts, practices and course of conduct in which Diggs and Cilvaringz have engaged are willful and malicious, Hawkins is entitled to exemplary and punitive damages in an amount to be set by the trier of fact, but not less than One Hundred Thousand ($100,000.00) Dollars.

**FOURTH CROSS-CLAIM AGAINST TARIK AZZOUGARH**

**(Breach of Contract)**

62.     Hawkins repeats and realleges his responses to the allegations contained in paragraphs 1 through 61 of the Complaint as if fully set forth herein

63.     As alleged above, Cilvaringz did not have the contractual rights to include the verses and hooks written and recorded by Hawkins which were subject to their 2011 agreement in connection with and/or on a WTC Group Album.

64.     Notwithstanding the foregoing, Cilvaringz breached the terms of his agreement with Hawkins by compiling, producing and auctioning off the Shaolin Album, which included some or all of the verses and hooks delivered by Hawkins to Cilvaringz pursuant to their agreement, to this highest bidder.

65.     As a result of Cilvaringz breach of contract, Hawkins has suffered damages in an amount not less than his pro-rata share as a member of the WTC Group, equal to no less than 1/9 of the overall sale price of the Shaolin Album, which upon information and belief is not less than Two Million ($2,000,00.00) Dollars.

**FIFTH CROSS CLAIM AGAINST ROBERT DIGGS AND TARIK AZZOUGARH**

**(Fraud in Concealment)**

63.     Hawkins repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 62 as if fully set forth herein.

64.     As alleged in detail above, Diggs and Cilvaringz knowingly and intentionally concealed material facts from Hawkins with the intent to deceive and mislead Hawkins as to the intended use of certain hooks and verses written and recorded by Hawkins in the Shaolin Album.

65.     As described in detail herein, Diggs and Cilvaringz concealed from Hawkins, as part and parcel of their plan to induce  Hawkins to furnish his recording services and use his recorded performances on the Shaolin  Album without his knowledge or consent (i) their intended use of Hawkins recordings subject to the 2011 agreement he entered into with Cilvaringz; (ii) that they were entering into similar agreement with other WTC Group Members; (iii) that they were producing the Shaolin Album; (iv) that they were only pressing one copy of the Shaolin Album; (v) that they entered into a contract with Paddle8 top auction off the rights and ownership of the Shaolin Album to the highest bidder.

66.     Diggs and Cilvaringz acted with malice towards Hawkins and with willful disregard for the truth and for Hawkins' welfare.

67.     Diggs and Cilvaringz engaged in a scheme to defraud Hawkins and perpetuated their scheme by concealing material facts and information and by disseminating false information regarding the status of a new WTC Group album.  .

68.     As a direct and proximate result of Diggs' and Cilvaringz's concealment of material facts, information and scheme to defraud Hawkins, Hawkins has been damaged in an amount not less than $372,500, the exact amount to be proven at trial.

69.     Also, as a consequence of the severity of the actions of Diggs and Cilvaringz, actions, and as a matter of public policy and so as to deter other entities from engaging in similar actions, Hawkins is entitled to punitive damages in an amount to be determined at trial.

70.     To the to the extent either Diggs or Cilvaringz is liable to Hawkins for damages hereunder, they are both liable, jointly and severally, for any and all damages sustained by the Hawkins as their concealment and misrepresentations were made in furtherance of their conspiracy, plan and mutual agreement to defraud Hawkins of income generated by the sale of the Shaolin Album.

## JURY DEMAND

Hawkins demands a trial by jury on all causes of action alleged in the Complaint and by and through his Cross-Claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Hawkins demands judgment dismissing the Complaint in its entirety; granting him all relief requested with respect to his affirmative defenses; all relief requested as stated in cross claims for contribution, indemnification and claims for monetary damages as detailed therein; and for all attorneys' fees, costs and disbursements of this action; and for such further relief as this Court deems just and proper.

Respectfully submitted,

Dated: June 12, 2018                    BY: /s/ Jon D. Jekielek
                                        Jon D. Jekielek
                                        Jekielek & Janis LLP
                                        31 Cloverhill Place, Floor 1
                                        Montclair, NJ 07042
                                        T: (212)686-7008
                                        Jon@Jj-Lawyers.com

*Attorney for Defendant Lamont Jody Hawkins*