USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/23/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WARREN W. PATTERSON,

              Plaintiff,

-against-

ROBERT DIGGS, DARRYL HILL, DENNIS COLES, GARY GRICE, JASON HUNTER, ELGIN TURNER, CLIFFORD SMITH, COREY WOODS, LAMONT JODY HAWKINS, TARIK AZZOUGARH, and PADDLE8 NY LLC
              Defendants.

No. 18-CV-03142 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Warren W. Patterson commenced this action seeking injunctive relief and monetary damages arising from Defendants' alleged violations of federal copyright law and section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (the "Lanham Act"). Plaintiff filed an Amended Complaint on October 19, 2018. (ECF No. 61.) Answers to the Amended Complaint have been filed by all appearing Defendants, except for Defendant Corey Woods (ECF Nos. 63, 65, 66). Defendant Woods, appearing *pro se*, now moves, in effect, to dismiss the Amended Complaint as against him for failure to state a claim for which relief may be granted pursuant to Federal Rules of Civil Procedure Rule 12(b)(6). For the reasons stated herein, Woods' motion is GRANTED in part and DENIED in part.

## BACKGROUND

    In considering a Rule 12(b)(6) motion, a court is limited to the facts alleged in the complaint and is required to accept those facts as true. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). A court may, however, consider documents attached to the complaint; statements or documents incorporated into the complaint by reference; matters of

which judicial notice may be taken, such as public records; and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See, e.g.*, *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (applying that rule to district courts); *accord Wechsler v. HSBC Bank USA, N.A*, No. 15-CV-5907 (JMF), 2016 WL 1688012, at *1 (S.D.N.Y. Apr. 26, 2016), *aff'd* 674 F. App'x 73 (2d Cir. 2017). Accordingly, the following facts are taken from the Amended Complaint and exhibits attached thereto or incorporated by reference therein, and are accepted as true for the purpose of this motion.

Plaintiff, a citizen and resident of the United Kingdom, is an internationally known photographer with business spanning from London to Marrakech, Morocco. (Amended Complaint (ECF No. 61) ¶¶ 37-38.) He is the author of a photograph entitled IMG_1546_RF3, along with other similar photographs ("Plaintiff's Work"). (*Id.* ¶ 39; Ex. A.) The subject of Plaintiff's Work is a nickel-silver casing created by nonparty Moroccan company Yahya Creation, a division of nonparty Yahya Group. (*Id.* ¶ 42-43; Ex. A.) Plaintiff filed a copyright application on Plaintiff's Work with the United States Copyright Office on September 12, 2017, under case number 1-5811297812, which matured to registration number VA2-107-241 ("Plaintiff's Copyright"). (*Id.* ¶ 40; Ex. B.) Plaintiff's Work contains metadata with information regarding his authorship and copyright (*Id.* ¶ 41; Ex. C.) The Court notes that the copyright information included in the metadata refers to a 2013 copyright. (*Id.* Ex. C.) Conversely, Plaintiff's Copyright was first registered on September 12, 2017. (*Id.* Ex. B.)

Plaintiff was asked to create the photographs comprising Plaintiff's Work by nonparty John Rouach and Defendant Tarik Azzougarh in October 2013. (*Id.* ¶¶ 42-44.) Plaintiff created the photographs as an independent contractor, without input from any third-party. (*Id.* ¶ 45.)

There was no written contract between Plaintiff and Defendant Azzougarh, or between Plaintiff and nonparties John Rouach, Yahya Creation, or the Yahya Group. (*Id.* ¶ 46).

Between October 31, 2013, and November 28, 2013, Plaintiff spent over 50 hours at the offices of John Rouach, Yahya Creation, and Yahya Group, creating photographs of the nickel-silver casing that is the subject of Plaintiff's Work. (*Id.* ¶ 48). On or about June 10, 2014, Defendant Azzougarh requested more photographs from Plaintiff. (*Id.* ¶ 49.) Plaintiff spent over 30 additional hours at the offices of John Rouach, Yahya Creation, Yahya Group, and The Royal Mansour Hotel creating more photographs "related to and derived from" Plaintiff's Work. (*Id.* ¶ 50.) Plaintiff was not paid for the photography work he alleges that he performed. (*Id.* ¶ 51.)

Defendants Robert Diggs, Darryl Hill, Dennis Coles, Gary Grice, Jason Hunter, Elgin Turner, Clifford Smith, Corey Woods, and Lamont Jody Hawkins are members of the hip-hop group known as the Wu-Tang Clan. In 2014, the Defendants created a Wu-Tang Clan album called "Once Upon a Time in Shaolin" (the "Album"). (*Id.* ¶ 52.) The Album uses Plaintiff's Work as cover art. (*Id.*) The Album is advertised for sale on the website of Defendant Paddle8 NY, LLC ("Paddle8"), and on the website of nonparty scluzay.com. (*Id.* ¶¶ 53-54.) Plaintiff avers that Defendants have also used Plaintiff's Work to market and advertise musical concerts and tours. (*Id.* ¶ 55.) Plaintiff has not provided any of Defendants with authorization or license to use Plaintiff's Work. (*Id.* ¶ 56.)

Plaintiff alleges that Defendants' conduct has infringed Plaintiff's exclusive rights under copyright in violation of federal copyright law. Plaintiff further contends that Defendants' use of Plaintiff's Work in connection with the Album and the advertising thereof is in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125, insofar as such use constitutes a false representation that Plaintiff's Work is sponsored by, or otherwise affiliated with Defendants, and

3

a false advertisement as to the authorship of Plaintiff's Work. Defendant Woods now moves to dismiss the Amended Complaint. Defendant Woods avers, *inter alia*, that the Amended Complaint should be dismissed as against him because he has never had any type of relationship with Plaintiff, did not take part in any of the violations of federal law alleged by Plaintiff, and was unaware that any such violations had ever taken place.

## MOTION TO DISMISS STANDARD

When considering a motion to dismiss drafted by a *pro se* defendant, the court is "mindful that a *pro se* party's pleadings must be 'liberally construed' in favor of that party and are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Peirez, Ackerman & Levine v. Starr*, No. 92-CV-7958(PKL), 1994 WL 48811, at*1 (S.D.N.Y. Feb. 17, 1994) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). Nonetheless, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Askew v. Lindsey*, No. 15-CV-7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

While Defendant Woods does not explicitly address his motion to a particular legal theory, Plaintiff's opposition operates under the assumption that the motion is for failure state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6). (Pl.'s Mem. in Resp. to Def.'s Mot. to Dismiss (ECF No. 76) 1.) In light of the foregoing, the Court considers Defendant Woods' motion under the standards applicable to a Rule 12(b)(6) motion to dismiss.

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

4

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

Defendant Woods cites to no legal authority or rule under which Plaintiff's case should be dismissed as against him. Instead, Defendant Woods disputes the factual bases for Plaintiff's claims. Specifically, Defendant Woods asserts in a two-page memorandum that he was unaware of "the incident" described in the Amended Complaint before April 19, 2018, that he has never engaged in any business dealings with Plaintiff, that any copyright infringement was "not done deliberately," and that he "took no part in any false advertising or false designation of origin." (Def.'s Mot. to Dismiss (ECF No. 64) 2.) Defendant Woods further avers that, contrary to the allegations in the Amended Complaint, he was not involved in the creation of the Album, the sale

5

of the Album, or the marketing of a music tour based on the Album. (*Id.* 2-3.)

The Amended Complaint asserts causes of action sounding in copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 301, violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202, vicarious copyright infringement, contributory copyright infringement, and violations of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  At this stage in the proceedings, before discovery has taken place, a complaint may only be dismissed as a matter of law.  "The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.'" *Bertuglia v. City of New York,* 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012) (quoting *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985)).  Thus, the Court cannot consider Defendant Woods' attempts to refute Plaintiff's allegations at this juncture.  The Court is bound to accept Plaintiff's allegations as true and draw all reasonable inferences in Plaintiff's favor.  With these obligations in mind, the Court turns to its examination of the legal sufficiency of Plaintiff's claims.

### A. Plaintiff's Copyright Infringement Claims

Viewing the Amended Complaint in the light most favorable to the Plaintiff, the Court finds that Plaintiff's claims based on theories of copyright infringement are adequately pled under the federal pleading standards articulated by the Supreme Court in *Iqbal* and *Twombly*.

*i. Direct Copyright Infringement*

Plaintiff's first cause of action arises under the Copyright Act, 17 U.S.C.§ 301.  To withstand a motion to dismiss, "a complaint based on copyright infringement must allege: (1) which original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the

statute; and (4) by what acts during what time the defendant infringed the copyright." *MWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 353 (S.D.N.Y. 2014) (citing *Palatkevich v. Choupak*, Nos. 12-CV-1681(CM), 12-CV-1682(CM), 2014 WL 1509236, *6 (S.D.N.Y. Jan. 24, 2014) (quotation omitted)).

Plaintiff claims in the Amended Complaint that he is the owner of a valid, registered copyright covering Plaintiff's Work, and that Defendants reproduced Plaintiff's Work on the cover of the Album without Plaintiff's authorization or license. (Am. Compl. ¶¶ 40, 52-56.) Plaintiff further avers that Defendants have marketed the Album and a musical tour based on the Album without Plaintiff's consent, and that each of Defendants' infringing activities occurred subsequent to the date of registration of Plaintiff's copyright. (*Id.* ¶¶ 62-56, 59.) Taken as true, these allegations state a claim for copyright infringement.

*ii. Violation of the Digital Millennium Copyright Act*

Plaintiff's second cause of action arises under the Digital Millennium Copyright Act ("DMCA"). The DMCA protects against the removal or alteration of copyright management information ("CMI"), which is defined in part as identifying information about the author of a work "conveyed in connection with" the work. 17 U.S.C. § 1202(c). Specifically, the DMCA prohibits (1) the removal or alteration of CMI, (2) the distribution of CMI with missing or altered information, and (3) the distribution of works containing missing or altered CMI. 17 U.S.C. § 1202(b).

Plaintiff alleges that Defendants violated each of these prohibitions. Specifically, Plaintiff alleges that Defendants, without authorization, "intentionally remov[ed] and/or alter[ed] the copyright information, in the form of metadata, on the copy of at least Plaintiff's copyrighted photograph, and distribut[ed] copyright management information with knowledge that the

copyright management information had been removed or altered . . . and distributed and publicly displayed the material, knowing that copyright management information had been removed or altered." (Am. Compl. ¶ 64.) Plaintiff supports his complaint with an exhibit purporting to show the alleged metadata included in one photograph from Plaintiff's Work. (*Id.* Exhibit C.) The metadata lists Plaintiff as the author of the photograph, marks the status of the photograph as "Copyrighted," and contains a "Copyright Notice" that reads, "image © 2013 Warren Wesley Patterson." The metadata also includes a "Copyright Info URL" box listing Plaintiff's website, www.warrenwesleyphotography.com.

Although Plaintiff's allegations in the Amended Complaint are somewhat sparse, Plaintiff has sufficiently alleged the existence of CMI and its intentional removal or alteration by Defendants to state a claim under subsection 1202(b) of the DMCA. *See Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659, 664 (S.D.N.Y. 2017) (plaintiff photojournalist sufficiently stated a claim under the DMCA by alleging that defendant posted a photograph from plaintiff's social media page omitting a copyright notice included in plaintiff's original post, which contained copyright symbol, plaintiff's name, and phrase "all rights reserved"); *Devocean Jewelry LLC v. Associated Newspapers Limited*, No. 16-CV-2150, 2016 WL 6135662, at *2 (S.D.N.Y. Oct. 19, 2016) (plaintiff stated a DMCA claim sufficient to survive a motion to dismiss by alleging that the removal of a watermark containing its logo from a series of images was done "with the knowledge that such removal would induce, enable, facilitate, or conceal an infringement"); *see also Zalewski v Cicero Builder Dev., Inc.*, 754 F.3d 95, 107 (2d Cir. 2014) (quotations omitted) (highlighting as an example of CMI covered by the DMCA "the familiar © copyright notice").

### *iii. Vicarious Copyright Infringement*

Plaintiff's third and fifth causes of action sound in vicarious copyright infringement. A defendant is liable for vicarious copyright infringement where he "profit[s] from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster,* 545 U.S. 913, 930 (2005); *see also BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 357 (S.D.N.Y. 2014); *In re Cellco Partnership,* 663 F. Supp. 2d 363, 370 (S.D.N.Y. 2009). More specifically, a defendant is vicariously liable for infringement when "the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials—even in the absence of actual knowledge that the copyright monopoly is being impaired." *Viacom Int'l, Inc. v. YouTube, Inc.,* 676 F.3d 19, 36 (2d Cir. 2012) (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 207 (2d Cir. 1963)) (brackets omitted). A party has control where it has "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 385 (S.D.N.Y. 2016) (quoting *Blank Prods., Inc. v. Warner/Chappell Music, Inc.*, No. 11-CV-7927(KMW), 2013 WL 32806, at *3 (S.D.N.Y. Jan. 3, 2013). A financial interest in the exploitation of copyrighted materials exists "where the availability of infringing material acts as a draw for customers." *Rams*, 202 F. Supp. 3d at 385 (quoting *A & M Records, Inc. v. Napster Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (quotations omitted)).

Plaintiff states that Defendants have the right and ability to supervise the activities of those engaged in the direct infringement of his copyright by virtue of their "contractual rights, license agreement(s), and/or approval rights," (*Id.* ¶ 70), thus alleging that Defendants had both the legal right and practical ability to control the infringing conduct. Plaintiff also states that

9

Defendants "derive a direct financial benefit" from the infringement of Plaintiff's Copyright, "including without limitation [through] revenue sharing and/or royalty payments for each infringing version [of the Album] sold."  (Am. Compl. ¶ 69.)  Plaintiff does not explicitly argue that the sales of the Album are linked to Defendants' use of Plaintiff's Work on the Album cover.  Nonetheless, drawing all inferences in Plaintiff's favor, it is at least arguable that Plaintiff's Work, which is prominently featured in advertisements for the Album and in entertainment articles describing the Album, (Am. Compl. Ex. E, F), has played a role in the Album's marketability, reaping Defendants direct financial benefits in the form of album sales.  *See Rams*, 202 F. Supp. 3d at 385.  Therefore, Plaintiff has sufficiently pled a cause of action for vicarious copyright infringement.

> *iv. Contributory Copyright Infringement*

Plaintiff's fourth cause of action sounds in contributory copyright infringement.  "To establish a claim for contributory copyright infringement, a plaintiff must allege that the defendant with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of another." *Wolk v. Kodak Imaging Network, Inc.,* 840 F. Supp. 2d 724, 750 (S.D.N.Y. 2012) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)) (internal quotation marks omitted).  "The knowledge standard is an objective one; contributory infringement liability is imposed on persons who 'know or have reason to know' of the direct infringement." *Arista Records, Inc. v. Doe 3.*, 604 F.3d 110, 118 (S.D.N.Y. 2010) (quoting *A & M Records*, 239 F.3d at 1020) (emphasis omitted).

Here, Plaintiff avers that Defendants "induced, caused, and/or materially contributed to the direct infringement of Plaintiffs' [W]ork . . . by, among other things, commissioning and/or licensing the electronic versions of the Plaintiff's photograph, and providing galley proofs or

10

similar high-quality source material for rendition into electronic format." (Am. Comp. ¶ 77.) While Plaintiff's assertion that Defendants "had constructive" or "actual knowledge that the infringement violated Plaintiff's rights" is a legal conclusion not entitled to a presumption of truth, *see Iqbal*, 556 U.S. at 678, Plaintiff provides factual assertions related to Defendants' knowledge of the infringement elsewhere in the Amended Complaint.  For example, Plaintiff states that he was hired by Defendant Azzougarh to create Plaintiff's Work and provides e-mail exchanges between Plaintiff and Defendant Azzougarh related to Plaintiff's Work. (Am. Compl. ¶ 42, Ex. D.)  The e-mail exchanges also refer to the Album and include links to numerous articles referencing the Wu-Tang Clan's announcement of the Album. (*Id.* Ex. D.)  Moreover, drawing all reasonable inferences in Plaintiff's favor, it is plausible that the remaining Defendants, as the recording artists and distributors of the Album, would have reason to know of the infringing use of Plaintiff's Work on the Album cover.  *See Rams*, 202 F. Supp. 3d at 383-84. Plaintiff's allegations are thus sufficient to state a claim for contributory infringement.

### B. Plaintiff's Lanham Act Claims

While Plaintiff has pled facts sufficient to sustain the foregoing causes of action on a motion to dismiss, Plaintiff's Lanham Act claims warrant further scrutiny.

Section 43(a) of the Lanham Act ("Section 43(a)") establishes liability for "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that:

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities.

15 U.S.C. § 1125(a)(1)(A)-(B).  Thus, Section 43(a) prohibits "actions like trademark infringement that deceive consumers and impair a producer's goodwill."  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32 (2003).

The Supreme Court has made clear that Section 43(a) protects a limited class of plaintiffs. In *Dastar*, the plaintiffs brought a reverse passing off claim against Dastar Corp., the distributor of a video series about the allied campaign in Europe during World War II, called "World War II Campaigns in Europe."  *Dastar*, 539 U.S. at 26-28.  Dastar Corp.'s video series included a substantial amount of footage from the "Crusade" television series, but failed to attribute the television series as the origin of the footage.  The Supreme Court held that the plaintiffs, the distributors of the Crusade series, could not prevail on their Lanham Act claim against Dastar Corp., because Dastar Corp. was the "origin" of the products it sold as its own.  *Id.* at 38. Specifically, the Supreme Court stated that

> reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which were), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.

*Id.* at 37 (emphasis omitted).  In other words, where the good in question is "a communicative product—one that is not valued primarily for its physical qualities . . . but for the intellectual content that it conveys," such as a book or video, the term "origin" refers not to the author of the ideas in the book or video, but to the book's publisher or the producer of a television program utilizing the video.  *Id.* at 33-35.  Thus, the right to copy creative works, with or without attribution, is the domain of copyright, not of trademark or unfair competition, and the failure to credit the true

12

author of a copyrighted work is not a false designation of origin, but a violation of copyright. *Id.* at 33; *see Phoenix Entm't Partners, LLC v. J-V Successors, Inc.*, 305 F. Supp. 3d 540, 547 (S.D.N.Y. 2018); *Fioranelli v. CBS Broadcasting Inc.*, 232 F. Supp. 3d 531, 541 (S.D.N.Y. 2017).

Pursuant to the statutory language, claims under Section 43(a) may be styled as either false representation claims under subsection (A), or false advertising claims under subsection (B). *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011).  Plaintiff alleges, in effect, that Defendants' use of Plaintiff's Work in connection with and in association with the Album, without authorization from Plaintiff, constitutes unfair competition in violation of each subsection of Section 43(a).[1]  Specifically, Plaintiff claims, *inter alia*, that Defendants have engaged in "false representations of association with Plaintiff" and "misleading representations about Plaintiff's Work," and that the public is thereby "likely to be confused as to the origin and source of Defendants' products and relationship to Plaintiff and/or believe that Defendants are licensed, sponsored or otherwise authorized by Plaintiff to offer Plaintiff's Work." (Am. Compl. ¶¶ 93, 95-98, 104, 106.) Plaintiff further avers that "Defendants' products and services are targeted to the exact same consumers, subscribers, clients and licensees as Plaintiff and the Defendants provide exactly the same services to Plaintiff's competitors, as does Plaintiff." (*Id.* ¶ 94.)

*Dastar* and its progeny foreclose Plaintiff's Lanham Act claims for false representation and false advertising. With regard to his false representation claim, Plaintiff essentially contends that Defendants misrepresent the origin of the Album's cover art, as well as the affiliation between Plaintiff's Work and Defendants, by publishing Plaintiff's Work without license as part of the Album. However, the author of a photograph that is reproduced in tangible products or goods such

---

[1] Plaintiff's seventh cause of action erroneously cites to 15 U.S.C. § 1125(a)(2), which simply defines the term "any person" as used within the statute. Since Plaintiff has labeled his seventh cause of action as "False Advertising," however, the Court presumes that Plaintiff's intention was to state a claim pursuant to 15 U.S.C. § 1125(a)(1)(B).

as a musical album cover is not the "origin of goods" within the meaning of the Lanham Act. Thus, Plaintiff may not claim that Defendants, by reproducing his photographs on the Album cover without proper attribution, have made a false representation pursuant to 15 U.S.C. § 1125(a)(1)(A).[2] *See Fioranelli*, 232 F. Supp. 3d at 540-41.  Stated differently, "[b]ecause photographs are 'communicative products' protected by copyright, false designation of their authorship is not cognizable under section 43(a)(1)(A) after *Dastar*." *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011).

The court in *Shepard v. European Pressphoto Agency*, 291 F. Supp. 3d 465 (S.D.N.Y. 2017), found that, in some situations, the foregoing rule is complicated by the fact that the producer of the creative idea for a product and the producer of the actual product are the same.  In *Shepard*, the court held that the author of a "communicative product" such as a photograph who is also the producer of tangible goods offered for sale may assert a Lanham Act claim for false designation of origin.  *Shepard*, 291 F. Supp. 3d at 470; *see also Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 592-93 (8th Cir. 2018).  In that case, the plaintiffs were courtroom artists who also sold their artwork.  *Id.* at 468.  The plaintiffs were permitted to proceed on their unfair competition claims against the defendant, an international news photo service that they alleged had published their artwork without authorization.  *Id.* at 468-69, 470.

The facts of the instant case are distinguishable.  In the Amended Complaint, Plaintiff attempts to style himself as both the author of the ideas encompassed by Plaintiff's Work and a producer of tangible goods by asserting that he and Defendants craft "products and services" that

---

[2] While *Dastar* addressed itself to a misrepresentation of origin claim, courts have recognized that its reasoning applies with equal force to bar claims pursuant to Section 43(a) for false representation of affiliation between the author and distributor of communicative products.  *See Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011); *Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 399 (S.D.N.Y. 2006).

target the "exact same consumers." (Am. Compl. ¶ 94.) However, Plaintiff's conclusory assertions are belied by the very facts he pleads. Plaintiff states that he is a photographer who works as a freelance artist. (*Id.* ¶¶ 37-38, 45.) He does not state that he advertises or sells any of his photographs. Conversely, Defendants are the artists and producers or distributors behind a hip-hop album and are alleged to have advertised and sold copies of the Album to the public. (*Id.* ¶¶52-56.) In sum, Plaintiff has not alleged any facts that would, if believed, support his classification as the producer of tangible goods offered for sale. Moreover, Plaintiff's claim that he is the producer of his own products such that Defendants interfered with his business in violation of the Lanham Act is meritless, as the Amended Complaint clearly states that Defendants created the Album, and consumers who purchased the Album were not falsely informed about the origins of the Album because Defendants did in fact produce it. *See Fioranelli*, 232 F. Supp. 3d at 541.

As to Plaintiff's false advertising claim, section 43(a)(1)(B) prohibits misrepresentations "in commercial advertising or promotion" of "the nature, characteristics, qualities, or geographic origin" of goods. 15 U.S.C.§ 1125(a)(1)(B). Plaintiff's false advertising claim is premised on his assertion that Defendants have made representations "giving the clear but false impression that Plaintiff licensed or otherwise authorized Defendants to reproduce, display, sell, and distribute Plaintiff's Work," and in doing so have misrepresented the authorship of Plaintiff's Work. (Am. Comp. ¶ 104, 106.) None of the alleged misrepresentations amounts to a misrepresentation of "the nature, characteristics, qualities, or geographic origin" of Defendants' goods. 15 U.S.C.§ 1125(a)(1)(B); *see Agence France Presse*, 769 F. Supp. 2d at 308; *see also Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.*, No. 06-CV-14212(RMB), 2007 WL 2193964, at *3 (S.D.N.Y. July 27, 2007).

Moreover, Plaintiff's allegations in support of his false advertising claim are identical to

those supporting his false representation claim. "The import of *Dastar* that an author's recourse for unauthorized use is in copyright cannot be avoided by shoe-horning a claim into section 43(a)(1)(B) rather than 43(a)(1)(A)." *Agence France Presse*, 769 F. Supp. 2d at 308; *see Antidote Int'l. Films. Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 400 (S.D.N.Y. 2006) (if authorship were a "characteristic[ ]" or "qualit[y]" of a work, then the very claim *Dastar* rejected under § 43(a)(1)(A) would have been available under § 43(a)(1)(B)).

In sum, since Defendants were the "origin" of the products they sold as their own, Plaintiff fails to state a claim for relief under the Lanham Act.

## CONCLUSION

For the foregoing reasons, Defendant Corey Woods' motion to dismiss is GRANTED in part and DENIED in part, without prejudice to the subsequent filing of a summary judgment motion. The motion is granted with respect to Plaintiff's Lanham Act claims, which comprise the sixth and seventh causes of action in the Amended Complaint, and those claims are dismissed. The motion is denied with respect to Plaintiff's claims sounding in direct copyright infringement, violation of the Digital Millennium Copyright Act, vicarious copyright infringement, and contributory infringement. Defendant Corey Woods is directed to file his answer with respect to Plaintiff's surviving claims on or before September 13, 2019.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 75, mail a copy of this Opinion to Defendant Corey Woods, and file proof of service on the docket.

Dated: August 23, 2019  
       White Plains, New York

SO ORDERED:

NELSON S. ROMÁN  
United States District Judge